# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETT SHOLDER and | : | |
| BRETT ENTERPRISES, LLC D/B/A | : | |
| SKY MOTOR CARS, | : | |
| Plaintiffs, | : | CIVIL ACTION - LAW |
| | : | |
| v. | : | No. |
| | : | |
| TODD MYERS and | : | |
| TRM AUTO BROKERS, LLC D/B/A | : | |
| UDRIVE AUTOMOBILES | : | |
| Defendants. | : | |

## NOTICE OF REMOVAL

Defendants, Todd Myers and TRM Auto Brokers, LLC D/B/A UDrive Automobiles, file this Notice of Removal of the above-described action to the United States District Court for the Eastern District of Pennsylvania from the Court of Common Pleas of Chester County, Pennsylvania, where the action is now pending as provided by Title 28, U.S. Code, Chapter 89 and state:

1.     The above captioned action was commenced in the Chester County, Pennsylvania, Court of Common Pleas and is now pending in that Court. Plaintiffs' Second Amended Complaint was first received by Defendants on March 11, 2016, and from this Defendants were for the first time able to ascertain that the case was removable: Plaintiffs, for the first time brought claims for "Unfair Competition & False Endorsement" under 15 U.S.C. § 1125(a)(1)(A); and "False Advertising" under 15 U.S.C. § 1125(a)(1)(B). A true and correct copy of Plaintiffs' Second Amended Complaint is attached hereto as "Exhibit A.

2.      There are no defendants to this action except Defendants, Todd Myers and TRM Auto Brokers, LLC D/B/A UDrive Automobiles.

3.      This action was commenced against Defendants in the Chester County, Pennsylvania, Court of Common Pleas by Plaintiffs, and is of a civil nature, raising Trademark violations under the Lanham Act, 15 U.S.C. § 1051 e*t seq.* The United States District Court for the Eastern District of Pennsylvania has jurisdiction by reason of 28 U.S.C. § 1331 in that the action arises under the Laws of the United States that, as appears from the Second Amended Complaint, Plaintiffs base their claim for relief against Defendants by virtue of and under the federal statutes and acts of Congress.

4.      The United States District Court for the Eastern District of Pennsylvania also has jurisdiction by reason of 28 U.S.C. § 1338(b) in that Plaintiffs are asserting a claim of unfair competition joined with related claims under the United States trademark laws.

5.      The United States District Court for the Eastern District of Pennsylvania also has supplemental jurisdiction over the non-trademark claims in the action by reason of 28 U.S.C. § 1367(a) in that those claims are so related to the trademark claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.      The Second Amended Complaint expressly raising Trademark claims was served on Defendants on March 11, 2016, and that the time has not elapsed within which Defendants are allowed to file this Notice of Removal of action to this Honorable Court.

7.      A copy of all process, pleadings, and orders served upon Defendants is filed with this Notice.

8.      Defendants will give written notice to all parties of the filing of this Notice as required by 28 U.S.C. § 1446(d).

9.     A copy of this Notice will be filed with the clerk of the Court of Common Pleas of Chester County, Pennsylvania, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants request that this action proceed in this Honorable Court as an action properly removed to it.


Dated: March 21, 2016                                Respectfully submitted,


                                                         */s/ Joseph Zaffarese*
                                                         JOSEPH ZAFFARESE
                                                         PA Bar ID. 84724
                                                         Ahmad Zaffarese LLC
                                                         One South Broad Street, Suite 1810
                                                         Philadelphia, PA 19107
                                                         Telephone:  215-6496-9373
                                                         Facsimile: 215-496-9419
                                                         jzaffarese@azlawllc.com
                                                         **Attorney for Defendants**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETT SHOLDER and | : | |
| BRETT ENTERPRISES, LLC D/B/A | : | |
| SKY MOTOR CARS, | : | |
|        Plaintiffs, | : | CIVIL ACTION - LAW |
| | : | |
|   v. | : | No. |
| | : | |
| TODD MYERS and | : | |
| TRM AUTO BROKERS, LLC D/B/A | : | |
| UDRIVE AUTOMOBILES | : | |
|        Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Joseph Zaffarese, hereby certify that on this 21st day of March, 2016, a true and correct copy of the foregoing Notice of Removal in the above-captioned matter was served by regular mail upon the following party:

    Lance Rogers
    Joseph Heffern
    *Counsel for Plaintiffs*
    Rogers Castor
    26 East Athens Avenue
    Ardmore, PA 19003

                    */s/ Joseph Zaffarese*
                    JOSEPH ZAFFARESE
                    PA Bar ID. 84724
                    Ahmad Zaffarese LLC
                    One South Broad Street, Suite 1810
                    Philadelphia PA  19107
                    Telephone:  215-6496-9373
                    Facsimile: 215-496-9419
                    jzaffarese@azlawllc.com
                    **Attorney for Defendants**

# EXHIBIT A

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| BRETT SHOLDER | : | |
| BRETT ENTERPRISES, LLC D/B/A SKY | : | |
| MOTOR CARS | : | |
| | : | NO.  15-01586 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TODD MYERS | : | |
| TRM AUTO BROKERS, LLC D/B/A UDRIVE | : | |
| AUTOMOBILES | : | |
| | : | |
| Defendants. | : | |

---

## NOTICE TO DEFEND

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed or any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET HELP.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFFERAL AND INFORMATION SERVICE
Chester County Bar Association
15 W. Gay Street
West Chester, PA  19380
(610) 429-1500

**Lance Rogers, Esquire**
**Joseph R. Heffern, Esquire**
**Rogers Castor**                              **ATTORNEYS FOR PLAINTIFFS**
**Attorney I.D. No. 87546/321134**
26 East Athens Avenue
Ardmore, PA 19003
610.649.1880
877.649.1880 (fax)

---

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL ACTION

---

| | | |
|---|---|---|
| BRETT SHOLDER | : | |
| BRETT ENTERPRISES, LLC D/B/A SKY | : | |
| MOTOR CARS | : | |
| | : | NO.   15-01586 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TODD MYERS | : | |
| TRM AUTO BROKERS, LLC D/B/A UDRIVE | : | |
| AUTOMOBILES | : | |
| | : | |
| Defendants. | : | |

---

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs, Brett Sholder and Brett Enterprises, LLC, doing business as Sky Motor Cars, by and through their attorneys, Rogers Castor, hereby bring the following Complaint and in support thereof aver as follows:

### PARTIES

1.     Plaintiff Brett Enterprises, LLC, doing business as Sky Motor Cars, is a Pennsylvania Corporation using a corporate address of 431 South Bolmar Street, West Chester, Pennsylvania 19382. Plaintiff is duly registered to conduct business in Pennsylvania.

2.      Plaintiff Brett Sholder is an adult individual and the owner and president of Brett Enterprises, LLC, with a business address of 431 South Bolmar Street, West Chester, Pennsylvania 19382.

3.      Defendant TRM Auto Brokers, LLC, doing business as UDrive Automobiles, is a Pennsylvania Corporation using a corporate address of 722 East Union Street, West Chester, Pennsylvania 19382.

4.      Defendant Todd Myers is an adult individual and owner of TRM Auto Brokers, LLC, with a business address of 722 East Union Street, West Chester, Pennsylvania 19382.

**JURISDICTION**

5.      This Court has jurisdiction over this action pursuant to 42 Pa.C.S. §931(a) and 42 Pa.C.S. §5301.

6.      Venue is appropriate under Pennsylvania Rules of Civil Procedure 1006(a) and 402(a).

**FACTUAL BACKGROUND**

7.      In the late 1990s, Plaintiff Sholder and Defendant Myers began a business relationship in which they marketed and sold automobiles through the online auction site, eBay.

8.      In 2002, Plaintiff Sholder formed "Brett Enterprises, LLC" (hereinafter "Brett Enterprises") which in 2007 began doing business as "Sky Motor Cars," a wholesale car business, which utilizes the Internet to market and sell its inventory.

9.      In 2006, Defendants Myers and TRM Auto Brokers, LLC formed "TRM Auto Group, LLC" (hereinafter "TRM Auto Group"). TRM Auto Group marketed the inventories of car dealers on the Internet. Defendants opened an "eBay Motors" account (herein referred to as the "First eBay Account") to conduct TRM Auto Group's marketing activities.

2

10.     Plaintiffs used TRM Auto Group to market their inventory.

11.     On January 11, 2007, Plaintiff Brett Sholder purchased TRM Auto Group from Defendant Myers via a written "Agreement of Sale," including all of its assets. This sale included the purchase of the First eBay Account. TRM Auto Group was formally transferred to Brett Enterprises.

12.     After the sale, Plaintiffs continued to do business as "TRM Auto Group" for a significant period of time due to that name's established notoriety and presence on the Internet. Plaintiffs ultimately did business under the name Sky Motor Cars.

13.     To effectuate the aforementioned sale, the parties entered into an Agreement of Sale (hereinafter referred to as "Agreement").

14.     A true and correct copy of the Agreement is attached hereto as Exhibit 1.

15.     As per the intent of the Agreement, the parties agreed and understood that Plaintiffs would carry out the business diligently and substantially in the same manner as had previously been conducted, which included the use of the First eBay Account to market inventory.

16.     Defendant Myers began to informally work for Plaintiffs after the sale.

17.     The First eBay Account remained in Defendant Myers' control, although thereafter, Plaintiffs paid substantial annual fees to eBay to maintain the Account and it was used only to market and sell Plaintiffs' inventory.

18.     This account accumulated a large amount of positive customer reviews that were a direct result of Plaintiffs' sales.

19.     Customers shopping for cars could read these reviews and use them as a basis on which to make purchasing decisions. These reviews provided customers with confidence and

reassurance that they were dealing with a reputable entity, translating into higher sales for Sky Motor Cars.

20.     Moreover, Plaintiffs received eBay's coveted and prestigious seller awards for the years 2007 through 2011 for the Internet sales it made through the First eBay Account during that time.

21.     eBay's seller award are very valuable because they inspire confidence in potential Internet car buyers that the seller is successful, reputable, and provides excellent quality and customer service.

22.     On August 20, 2012, Defendant Myers decided to break away and re-establish the business that he sold to Plaintiffs, Defendant TRM Auto Brokers.  Defendants adopted the same business model as Sky Motor Cars and opened UDrive Automobiles (hereinafter referred to as "UDrive").

23.     In January 2013, Defendant Myers ceased his working relationship with Plaintiffs.

24.     Defendant Myers unilaterally hijacked the First eBay Account, which Plaintiffs rightfully own, by changing the eBay website username to "UDrive Automobiles" and effectively locking Plaintiffs out of the account.

25.     He subsequently used this account to advertise and promote UDrive's inventory and sales.

26.     Because the First eBay Account remained in Defendant Myers' control, once he severed ties with Plaintiffs, Plaintiffs could not access the account to continue marketing its vehicles, nor continue receiving the benefit of the positive customer reviews they had earned by selling cars over the course of many years through the First eBay Account.

27.     Instead, the First eBay Account (now being used by UDrive) continues to advertise hundreds of positive reviews that were generated from Plaintiffs' many years of business activity.  Many of these reviews specifically praise the quality and service that the reviewers received from Sky Motor Cars (by name).

28.     Now, Sky Motor Cars and UDrive are direct competitors, selling their cars over the Internet and through interstate commerce.  In fact, their physical sales facilities are located very close to each in West Chester, Pennsylvania.

29.     UDrive's use of the First eBay Account misleads consumers into believing that UDrive consummated the hundreds of successful transactions, which were actually consummated and underwritten by Sky Motor Cars.

30.     Moreover, because many of the reviews specifically praise Sky Motor Cars by name, UDrive's use of the First eBay Account deceives consumers into believing that UDrive is endorsed by or associated with Sky Motor Cars.  In effect, UDrive is free-riding on the good will associated with Plaintiffs' business and its good name, which Plaintiffs have assiduously cultivated over much of the last decade.

31.     There are twelve (12) different levels of power sellers in eBay, each represented by a different color, ranging from blue (the lowest level) to silver shooting star (the highest level), based on the number of sales.

32.     UDrive illegitimately relies on these reviews to create customer confidence, bolster its sales and advertise itself as a "purple star power seller," an eBay Motors' designation of distinction.

33.     Plaintiffs have made multiple attempts to cause Defendants to transfer the hundreds of positive reviews to its new eBay account, but those efforts have failed.

34.    Plaintiffs were forced to start a new eBay Motors account and webpage (herein referred to as "Second eBay Account").

35.    The Second eBay Account, due to its recent start, does not have nearly the same number of positive reviews.

36.    Plaintiffs' Second eBay Account has only recently obtained an entry-level power seller ranking of blue, whereas the First eBay Account has a far superior ranking.

37.    Plaintiffs paid more than $378,000.00 for the transactions reflected on the First eBay Account.

38.    Plaintiffs are unable to receive any benefit from its prior sales and corresponding positive feedback (*i.e.* consumer confidence and greater sales) for which Defendants are unjustly reaping the rewards.

39.    To add insult to injury, Plaintiffs recently learned that Defendants have begun specifically targeting UDrive e-mail advertisements to Plaintiffs' customers.

40.    Defendants' e-mail advertisements contain Internet links to Defendants' website and the First eBay Account.  Upon information and belief, these e-mail advertisements were directed to Plaintiffs' customers both in Pennsylvania and in other states.

41.    Moreover, Defendants' website has been falsely advertising that "UDrive" received eBay's coveted and prestigious seller awards for the years 2007 through 2011 for the Internet sales it made through the First eBay Account during that time.

42.    These claims are absolutely false and misleading since UDrive did not exist until 2012 and did not make any sales through the First eBay Account from 2007 through 2011.  In fact, the Premier Seller Awards for the years 2007 through 2011, to which UDrive falsely lays claim, were actually awarded to Sky Motor Cars.

43.     Plaintiff Sholder has recently been contacted by Plaintiffs' customers who are confused and believe that UDrive is endorsed by or associated with Sky Motor Cars.

44.     Accordingly, Plaintiffs believe that they have lost sales and good will from Defendants' false and deceptive marketing activities—including Defendants' recent attempts to specifically target Plaintiffs' customers with e-mail advertisements.

## COUNT I

### BREACH OF CONTRACT
### (All Plaintiffs v. Defendant Todd Myers)

45.     Plaintiffs hereby incorporate each of the above paragraphs as if fully set forth herein.

46.     Plaintiffs and Defendants entered into a contractual relationship as outlined above.

47.     Plaintiffs' purchase of TRM Auto Group included the First eBay Account.

48.     Defendants unilaterally and wrongfully took sole possession of that eBay Account and have used it for their own pecuniary benefit in breach of the parties' contract.

49.     Plaintiffs have suffered substantial damages as a direct result of Defendants' breach, including lost sales and good will.

WHEREFORE, Plaintiffs request this Honorable Court to:

a.      Enter an order awarding actual damages;

b.      Enter an order awarding compensatory damages;

c.      Enter an order awarding incidental damages;

d.      Enter an order awarding consequential damages; and

e.      Enter an order granting such further relief as may be just and equitable.

## COUNT II

## UNJUST ENRICHMENT
### (In the Alternative)
### (All Plaintiffs v. All Defendants)

50.    Plaintiffs hereby incorporate each of the above paragraphs as if fully set forth herein.

51.    Defendants are receiving the benefit of Sky Motor Cars' positive customer reviews in the nature of good will and customer confidence, which result in greater sales.

52.    Defendants did not pay the eBay fees necessary to gather and maintain the customer reviews.

53.    Defendants did not underwrite the sales supporting the reviews.

54.    As alleged herein, Plaintiffs paid hundreds of thousands of dollars to accumulate and maintain the reviews associated with the First eBay Account.

55.    Plaintiffs committed millions of dollars of capital towards underwriting the sales of automobiles giving rise to the eBay reviews.

56.    Accordingly, Defendants are being unjustly enriched.

57.    Plaintiffs have incurred additional costs.

WHEREFORE, Plaintiffs request this Honorable Court to:

a.    Enter an order awarding the value of the benefit conferred, together with incidental, compensatory, and consequential damages, costs, and interests; and

b.    Enter an order granting such further relief as may be just and equitable.


## COUNT III

## EQUITABLE RELIEF
### (All Plaintiffs v. All Defendants)

58. Plaintiffs hereby incorporate each of the above paragraphs as if fully set forth herein.

59. Plaintiffs and Defendants entered into a contractual relationship as outlined above.

60. Plaintiffs' purchase of TRM Auto Group included the First eBay Account.

61. Defendants did not pay the eBay fees necessary to gather and maintain the customer reviews.

62. Defendants are receiving the benefit of Sky Motor Cars' positive customer reviews in the nature of customer confidence, which result in greater sales.

63. As alleged herein, Plaintiffs paid hundreds of thousands of dollars to accumulate and maintain the reviews associated with the First eBay Account. Moreover, Plaintiffs spent millions of dollars underwriting the transactions leading to the positive reviews on the First eBay Account.

WHEREFORE, Plaintiffs request this Honorable Court to:

a. Enter an order granting the complete ownership and title of the First eBay Account to Plaintiffs; and

b. Order Defendants to transfer all control of the First eBay Account to Plaintiffs.

## COUNT IV

### UNFAIR COMPETITION & FALSE ENDORSEMENT
### 15 U.S.C. § 1125(a)(1)(A)
### (All Plaintiffs v. All Defendants)

64. Plaintiffs hereby incorporate each of the above paragraphs as if fully set forth herein.

65.     Plaintiffs' have a legally protectable right under 15 U.S.C. § 1125(a)(1)(A) to the mark, "Sky Motor Cars," and the First eBay Account—which is closely associated with that mark.

66.     Plaintiffs own the mark, Sky Motor Cars, and have continuously used it in commerce since at least 2007.

67.     Plaintiffs' Sky Motor Cars mark has achieved secondary meaning with the consuming public because it not only identifies Plaintiffs' products and services, but also represents the origin of those products or services.

68.     Plaintiff Brett Sholder is the rightful owner of the First eBay Account, which he purchased as part of the TRM Auto Group from Defendant Myers and which is closely associated with Plaintiffs' mark.

69.     Plaintiffs have accrued substantial goodwill and a reputation for impeccable quality and service with consumers (and in the industry generally) in association with the mark, Sky Motor Cars, and the First eBay Account associated with that mark.

70.     Many of the reviews posted on the First eBay Account directly refer to Plaintiffs' mark, Sky Motor Cars (or various permutations thereof), and leave the reader with the false impression that UDrive Automobiles is endorsed, sponsored by, and/or associated with Sky Motor Cars.

71.     Defendants' use of the Sky Motor Cars mark (and various permutations of it) and the First eBay Account associated with that mark to identify Defendants' goods and/or services is likely to create confusion concerning the Plaintiff's endorsement, sponsorship, or approval of Defendants' goods and services.

10

72.     Moreover, Defendants' use of Plaintiffs' mark (and various permutations of it) in conjunction with the First eBay Account to sell Defendants' goods and services is likely to create confusion concerning the origin of those goods or services.

73.     Indeed, Plaintiff Brett Sholder has been contacted by a number of individuals and customers who have been confused by Defendants' use of First eBay Account and its references to Plaintiffs' mark, Sky Motor Cars.

74.     The public's confusion has been exacerbated by Defendants' willful targeting of Plaintiffs' customers with interstate, e-mail advertisements that have contain Internet links to Defendants' website and the First eBay Account, which refers to Plaintiffs' mark.

75.     Upon information and belief, Plaintiffs believe that they have been damaged in the form of lost business and good will as a result of Defendants' unlawful and confusing use Plaintiffs' mark and the First eBay Account, which Plaintiff Sholder rightfully owns.

76.     Defendants' tortious actions have caused Plaintiff's irreparable harm in form of lost good will and business reputation, which a damage award alone cannot repair.

77.     Moreover, this is an exceptional case under 15 U.S.C. § 1117(a) because Defendants willfully and maliciously have targeted and confused Plaintiffs' customers in an attempt to steal the good will associated with Plaintiffs' business, mark, and First eBay Account.

WHEREFORE, Plaintiffs request this Honorable Court to:

a.      Enter an order enjoining Defendants from using the First eBay Account and from improperly or confusingly using or referring to Plaintiffs' mark in any advertising;

b.      Enter an order awarding actual damages, compensatory damages, Defendants' profits, and up to treble damages pursuant to 15 U.S.C. § 1117(a);

c.     Enter an order awarding costs and attorneys' fees pursuant to 15 U.S.C. §
       1117(a);

d.     Enter an order granting such further relief as may be just and equitable.

## COUNT V

### FALSE ADVERTISING
### 15 U.S.C. § 1125(a)(1)(B)
### (All Plaintiffs v. All Defendants)

78.    Plaintiffs hereby incorporate each of the above paragraphs as if fully set forth
herein.

79.    Defendants have made false and misleading statements in the advertising on their
websites concerning their products and service, by falsely asserting that UDrive Automobiles
received eBay's seller awards for the years 2007 through 2011 for its sales on the First eBay
Account.

80.    For example, attached as Exhibit 2 is a true and correct copy of eBay seller
awards that eBay purportedly awarded to UDrive Automobiles, which Defendants falsely
advertised on their website, http://www.udriveautomobiles.com.

81.    The eBay seller awards are coveted awards that distinguish the best and most
successful sellers of cars on eBay.

82.    The eBay seller awards that UDrive's advertisement refers to were actually
awarded to Sky Motor Cars for its sales made through the First eBay Account—not UDrive
Automobiles.

83.    In fact, UDrive Automobiles did not even exist and was not selling cars through
the First eBay Account during the years 2007 through 2011.

84.     Accordingly, Defendants' advertisements are false and actually are an attempt to steal the good will associated with Plaintiffs' business and mark.

85.     Defendants' false advertisements were specifically directed by e-mailed Internet links to Plaintiffs' customers in an attempt to deceive Plaintiff's customers.

86.     Upon information and belief, Defendants successfully deceived their intended audience into believing that UDrive Automobiles actually had received eBay's seller awards for the years 2007 through 2011.

87.     Defendants' deception is material in that it is likely to influence the public's purchasing decisions because eBay's coveted seller awards inspire confidence in potential Internet car buyers that the seller is successful, reputable, and provides excellent quality and customer service.

88.     The Plaintiffs and Defendants are direct competitors, who sell their cars over the Internet and in interstate commerce.  Accordingly, both Plaintiffs' and Defendants' cars travel in interstate commerce.

89.     Upon information and belief, Defendants have proximately injured the Plaintiffs in terms of lost sales, loss of good will, and otherwise by falsely claiming they received eBay's seller awards for Internet car sales through the First eBay Account for the years 2007 through 2011—when in reality Sky Motor Cars received the awards.

90.     Defendants' tortious actions have caused Plaintiffs' irreparable harm in form of lost good will and business reputation, which a damage award alone cannot repair.

91.     Moreover, this is an exceptional case under 15 U.S.C. § 1117(a) because Defendants willfully and maliciously have targeted and confused Plaintiffs' customers in an attempt to steal the good will associated with Plaintiffs' business, mark, and First eBay Account.

WHEREFORE, Plaintiffs request this Honorable Court to:

a.     Enter an order enjoining Defendants from using the First eBay Account and from falsely asserting that Defendants received eBay's seller awards for Internet car sales through the First eBay Account for the years 2007 through 2011 in any advertising;

b.     Enter an order awarding actual damages, compensatory damages, Defendants' profits, and up to treble damages pursuant to 15 U.S.C. § 1117(a);

c.     Enter an order awarding costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a);

d.     Enter an order granting such further relief as may be just and equitable.


                          ROGERS CASTOR

                          By: _____
                          Lance Rogers, Esquire
                          Joseph R. Heffern
                          Attorneys for Plaintiffs
                          ROGERS CASTOR
                          Attorney I.D. Nos. 87546/87819
                          26 East Athens Avenue
                          Ardmore, PA 19003
                          610-649-1880
                          877-649-1880 (fax)

## VERIFICATION

I, Brett Sholder, owner of Brett Enterprises, LLC d/b/a Sky Motor Cars, verify that the statements made in the foregoing document are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

BRETT SHOLDER

3 - 10 - 16

DATE

**ROGERS CASTOR**
26 East Athens Avenue
Ardmore, PA 19003
610.649.1880
877.649.1880 (fax)

**ATTORNEYS FOR PLAINTIFFS**

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL ACTION

BRETT SHOLDER                              :
BRETT ENTERPRISES, LLC D/B/A SKY           :
MOTOR CARS                                 :
                                           :   NO.    15-01586
                                           :
              Plaintiffs,                  :
                                           :
       v.                                  :
                                           :
TODD MYERS                                 :
TRM AUTO BROKERS, LLC D/B/A UDRIVE         :
AUTOMOBILES                                :
                                           :
              Defendants.                  :

### CERTIFICATE OF SERVICE

I, Lance Rogers, hereby certify that on March 11, 2016, I forwarded a true and correct copy of the

foregoing Plaintiffs' Second Amended Complaint in the above-captioned matter to Defendants' counsel, Joseph

Zaffarese, Esquire, at the following address:

Ahmad Zaffarese LLC
One South Broad Street, Suite 1810
Philadelphia, PA 19107

ROGERS CASTOR

By: _____
Lance Rogers, Esquire
Joseph R. Heffern, Esquire
Attorneys for Plaintiffs
Attorney I.D. Nos. 87546/321134
26 East Athens Avenue
Ardmore, PA 19003
610-649-1880
877-649-1880 (fax)

Exhibit 1

BUY - SELL AGREEMENT

This Buy-Sell Agreement (this "Agreement"), dated as of January 31, 2007, is between Brett Sholder, an individual (the "Buyer") and Todd R. Myers, an individual (the "Seller"). In consideration of the mutual covenants herein and intending to be legally bound hereby, the parties agree as follows:

Section 1. Sale and Purchase of the Interest.

1.1 Definitions

1.1.1    Buyer - Brett Sholder.
1.1.2    Closing Date - January 31, 2007 at 10:00 A.M.
1.1.3    Company - TRM Auto Group, LLC.
1.1.4    Interest - Seller's interest in the Company.
1.1.5    Purchase Price - One Dollar and No/Cents ($1.00).
1.1.6    Seller - Todd R. Myers.

1.2 Purchase and Sale.  Seller is the sole member of TRM Auto Group, LLC (the "Company"), a Pennsylvania limited liability company.  Seller owns a one hundred percent interest in the Company.  Buyer wishes to purchase Seller's interest, and Seller wishes to sell his interest to Buyer, all on the terms and conditions contained herein.

1.3 Purchase Price. The purchase price for Seller's interest in the company shall be One Dollar and No Cents ($ 1.00) and other good and valuable consideration in hand paid, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, all of which shall be payable at the Closing.

Section 3. Closing; Transfer Procedures.

3.1 Closing. The closing of the sale and purchase of Seller's interest (herein called the "Closing") shall take place at 10:00 A.M., local time, on January 31, 2007, (the "Closing Date") at such place as the parties may agree.

3.2 Minute Books, Corporate Seal and Stock Records.  At the Closing, the Seller shall deliver or cause the Company to deliver to the Buyer all minute books, corporate seals, and other stock records of the Company that may be in Seller's possession.

3.3 Delivery of the Interest. At the Closing, the Seller shall deliver to the Buyer an Unanimous Consent and Vote by Consent in Lieu of Meeting of Members of TRM Auto Group, Inc. authorizing the purchase and sale of the Interest.

3.4 Bank Account Signatures. At the Closing, the Seller shall deliver or cause the Company to deliver to the Buyer all necessary documents, if supplied by Buyer, required by any banks or other depository institutions for the Company to remove the authorized signatories and replace them with the Buyer's designees.

Section 4. Representations and Warranties of the Seller.

The Seller hereby represents and warrants to the Buyer, as follows:

4.1 Interest Ownership. The Seller owns the Interest free and clear of all liens, encumbrances, claims and other charges of every kind. The Seller has the full right to transfer the Interest to the Buyer free and clear of all liens, encumbrances, claims and other charges of every kind and without violating any agreement or understanding to which the Company or the Seller are a party or by which any of them is bound.

4.2 Disclosure.    No representation or warranty by the Seller in this Agreement or in any other exhibit, list, certificate or document delivered pursuant to this Agreement, contains or will contain any material omission or untrue statement of material fact. Disclosure in any particular Exhibit attached hereto shall constitute disclosure for all purposes of this Agreement.

The Buyer hereby represents and warrants to the Seller, as follows:

4.3 Tax Matters. The Company has filed or caused to be filed and will file all federal, state and local tax returns and reports through the  taxable year ended December 31, 2006, which are due and required to be filed and has  paid or caused to be paid all taxes due through December 31, 2006, and any assessment of taxes received, except  taxes or assessments that are being contested in good faith and have been  adequately reserved against. Since January 1, 2006, the Company has made all required interim tax payments, including, without limitation, all payroll withholding taxes, and Seller shall have no liability for any of the foregoing.

4.4 Litigation. There is no dispute, claim, action, suit, proceeding, arbitration or governmental investigation, either administrative or judicial, pending, or to the knowledge of any of the Sellers threatened, against or  related to the Company or its properties or business; and the Company is not in default with respect to any  order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality, which involves the possibility of any judgment or liability which may result in any material  adverse change in its financial condition, assets, liabilities, properties or business; and the Buyer knows of no facts which would provide a  basis for any such action, suit, proceeding or default referred to above.

4.5 Absence of Undisclosed Liabilities. The Company has no liabilities or obligations accrued, absolute, contingent or otherwise, except as disclosed in this Agreement or as incurred, consistent with past business practice, in the normal and ordinary course of its business since the date of the Financial Statements and none of which is material.

4.6 Compliance With Laws. The Company has received no notice of violation of any law, ordinance, rule, regulation or order (including, without limitation, any environmental, safety, health or price or wage control law, ordinance, rule, regulation or order), and to its knowledge none are pending or threatened, applicable to its operations, business or properties as presently constituted.

4.7 Employee Benefit Plans; Employee Relations.  Exhibit 4.7(a) sets forth a true and complete list and description of all pension, profit sharing, stock bonus, stock option, employment or severance agreements, deferred compensation plans, health, life, accident or disability plans, or any other agreement, arrangement, commitment or other employee benefit plan (including but not limited to, "employee benefit plans" within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended and the regulations promulgated thereunder ("ERISA")(the "Benefit Plans") maintained by the Company or with respect to which the Company has or may in the future have any  liability with respect to any current or former employee or their beneficiaries.

4.9 No Reliance.  Buyer has been operating the business of the Company, is fully familiar therewith and with its financial condition, and is not relying on any representation or warranty made by Seller except as set forth herein.

4.10 No Distribution of Offering.  The Buyer is purchasing the Interest for the sole purpose of selling the same to one third party, and not for the purpose of any public or private offering or distribution.

4.11 Disclosure.   No representation or warranty by the Seller in this Agreement or in any other exhibit, list, certificate or document delivered pursuant to this Agreement, contains or will contain any material omission or untrue statement of material fact. Disclosure in any particular Exhibit attached hereto shall constitute disclosure for all purposes of this Agreement.

Section 5. Conduct Pending the Closing.   Buyer hereby covenants and agrees that, pending the Closing and except as otherwise approved in advance in writing by the Seller:

5.1 Conduct of Business. The Company shall carry on its business diligently and substantially in the same manner as heretofore and refrain from any action that would result in the breach of any of the representations, warranties or covenants of the Sellers or the Company hereunder.

5.2 Contracts and Commitments. The Company shall not enter into any contract, commitment or transaction not in the usual and ordinary course of its business and not consistent with past practices.

5.3 Liabilities. The Company will not, and will not agree to, create any indebtedness or any other fixed or contingent liability including, without limitation, liability as a guarantor or otherwise with respect to the obligations of others, other than that incurred in the usual and ordinary course of its business consistent with past practices, and that incurred pursuant to existing contracts disclosed in the Exhibits attached hereto.

5.4 Amendment. The Company will not, and will not agree to amend its Operating Agreement, except to authorize this transaction.

5.5 Insurance. All insurance maintained by the Company insuring the Company, its employees, or its business or operations will be maintained by the Company in all respects until closing at which point, Seller shall be released from any and all premiums and bonds relating to the Company.

5.6 No Default. The Company shall not do any act or omit to do any act, or permit any act or omission, which will cause a material breach of any material contract, commitment or obligation to which it is a party or by which it is bound.

5.10 Tax Returns. The Company will prepare and file all state, federal and other tax returns, and amendments thereto required to be filed between the date of this Agreement and the Closing Date. The Seller shall have a reasonable opportunity to review all such returns and amendments thereto, prior to their being filed. Buyer will indemnify and hold Seller harmless from all tax liability, including any interest and/or penalties.

Section 6. Conditions Precedent to the Buyer's Obligations

All obligations of the Buyer under this Agreement are subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

6.1 Representations and Warranties. The Seller's representations and warranties contained in this Agreement or in any list,

certificate or document delivered pursuant to the provisions hereof shall be  true at and as of the time of Closing.

6.2 Performance of Agreements. The Sellers shall have  performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by them prior to or at the Closing.

6.3 Closing Deliveries. The Sellers shall have  delivered the documents and other items described in Section 3 hereof.

6.5 No Litigation. There shall not be any pending or, to the knowledge of the Company or any of the Sellers, threatened action, proceeding or investigation  by or before any court, arbitrator, governmental body or agency which shall  seek to restrain, prohibit or invalidate the transactions contemplated hereby  or which, if adversely  determined,  would  result  in  a  breach  of  a representation, warranty or covenant of any party hereto.

6.6 Adverse Change. There shall not have occurred a  material adverse change, event or casualty, financial or otherwise, in the Company  or  to  its  business  or  operations  whether  covered  by insurance or not.

Section 7. Conditions Precedent to  the Seller's Obligations

All obligations of the Seller under this Agreement are  subject to the fulfillment, prior to or at the Closing, of the following conditions:

7.1 Representations and Warranties. The Buyer's  representations and warranties contained in this Agreement shall be true at and  as of the time of Closing.

7.2 Performance of Agreements. The Buyer shall  have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

7.3 Closing Deliveries. The Buyer shall have paid the Purchase Price to the Seller as described in Section 2 hereof.

7.4 Adverse Change. There shall not have occurred a  material adverse change, event or casualty, financial or otherwise, in the Company  or  to  its  business  or  operations  whether  covered  by insurance or not.

Section 8. Fees and Expenses. Each party hereby represents and warrants to the other that it has not engaged or dealt with any broker or other person who may be entitled to any brokerage fee or commission in respect of the execution of this Agreement or the consummation of the transactions contemplated hereby. Each of the parties hereto shall indemnify and hold the other harmless against any and all claims, losses, liabilities or expenses which may be asserted against a party as a result of such other party's dealings, arrangements or agreements with any such broker or person.

Section 9. Indemnification

9.1 Survival of Representations, Warranties and Agreements. All representations, warranties and agreements made by the Seller and Buyer in this Agreement or in any certificate delivered pursuant hereto shall survive the Closing for a period of two years.

9.2 Indemnification by the Buyer. The Buyer shall defend, indemnify and hold the Seller harmless from and against all claims, damages, liabilities, losses, liens, costs and out-of-pocket expenses including but not limited to federal, state and local taxes of every nature, assessed or levied upon the Company or its members, and all interest or penalties thereon, and attorneys' fees, caused by or arising out of the breach of any agreements of or any representation or warranty made by the Buyer in this Agreement or in any certificate or document delivered by it pursuant hereto.

9.3 Defense of Claims. Promptly after any service of process by any third person in any litigation in respect of which indemnity may be sought from the other party pursuant to this Section 9, the party so served shall notify the indemnifying party of the commencement of such litigation, and the indemnifying party shall be entitled to assume the defense thereof at his expense with counsel of his own choosing.

Section 10. Miscellaneous

10.1 Further Assurances. Buyer and Seller will, at the request of each other from time to time, execute and deliver such further instruments and will take such other action reasonably required to consummate the transactions contemplated by this Agreement.

10.2 Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Pennsylvania.

10.3 Assignment. This Agreement shall not be assignable by either party without the prior written approval of the other party. To

the extent assignable, this Agreement shall be binding upon, and inure to the benefit of, the Buyer and the Seller and their respective heirs, executors, administrators and assigns.

10.4 Headings for Reference Only. The section and paragraph headings in this Agreement are for convenience of reference only and shall not be deemed to modify or limit the provisions of this Agreement.

10.5 Notices. Any notice, communication, demand or other writing (a "notice") required or permitted to be given, made or accepted by any party to this Agreement shall be given by personal delivery or by depositing the same in the United States mail, properly addressed, postage prepaid and registered or certified with return receipt requested. A notice given by personal delivery shall be effective upon delivery and a notice given by registered or certified mail shall be deemed effective on the second day after such deposit. For purposes of notice, the addresses of the parties shall be, until changed by a notice given in accordance herewith, the addresses presently in the records of the Company.

10.6 Incorporation of Documents. All Exhibits and Schedules referred to in this Agreement shall be deemed to be incorporated herein and made a part of this Agreement.

10.7 Entire Agreement and Amendment. This Agreement states the entire agreement reached between the parties hereto with respect to the transactions contemplated hereby and supersedes all prior or contemporaneous agreements, understandings, representations and warranties between the parties, and may not be amended except by written instrument executed by the parties hereto.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement on the day and year first above written.

_____          _____
Todd R. Myers                    Brett Sholder

Exhibit 2

2/9/2016                    Used 2007 Porsche 911 GT3 for sale in West Chester, PA | UDrive Automobiles



2/9/2016                        Used 2007 Porsche 911 GT3 for sale in West Chester, PA | UDrive Automobiles







Used 2007 Porsche 911 GT3 for sale in West Chester, PA | UDrive Automobiles





*click on a thumbnail to view full-size photos*

## Contact Information

Name:  Todd Myers        Main Phone:  (610) 738-6902        Email:  todd@udriveautomobiles.com

## Vehicle Features & Options

## Standard Features

### Air Conditioning:

- Active Charcoal Air Filtration
- Single Front Air Conditioning Zones
- Automatic Climate Control Front Air Conditioning

### Airbags:

- Occupant Sensing Passenger Airbag Deactivation
- Dual Front Airbags
- Front Side Airbags